UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TREVOR WHITTINGHAM,<br><br>        Petitioner,<br><br>-v-<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | No. 14-cv-7738 (RJS)<br>OPINION & ORDER |
| UNITED STATES OF AMERICA<br><br>-v-<br><br>TREVOR WHITTINGHAM,<br><br>        Defendant. | No. 12-cr-0971 (RJS)<br>OPINION & ORDER |

RICHARD J. SULLIVAN, District Judge:

  Trevor Whittingham ("Petitioner"), proceeding *pro se*, brings: (1) a petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (Doc. No. 30 (the "Petition" or "Pet.")), and (2) a motion for early termination of supervised release (Doc. No. 34). For the reasons set forth below, the Court denies both the Petition and the motion for early termination.

I. BACKGROUND

  From 2005 to 2009, Petitioner owned and operated parking garage businesses called "EZ Going Park Here" and "We Have Cars II" in New York City, which employed approximately a

dozen people. (Doc. No. 16 ("Plea Tr.") at 36:13–17.)[1] In that capacity, Petitioner was responsible for signing and filing his companies' quarterly tax returns with the Internal Revenue Service ("IRS") and for paying federal and state payroll taxes. (*Id.* at 36:25–37:2.) Over that period, Petitioner caused the entities under his control to deduct and collect approximately $251,265 in payroll taxes from his employees' wages that he failed to pay to the IRS. Instead, Petitioner used the funds for personal expenses such as vacations and automobiles, including a Ferrari sports car. (Doc. No. 26; *see also* Plea Tr. 39:8–17.)

On December 20, 2012, a grand jury returned an indictment charging Petitioner with thirteen counts of willful failure to collect, account for, and pay over to the IRS his employees' payroll taxes in violation of 26 U.S.C. § 7202. (Doc. No. 2.) Over the course of his prosecution, Petitioner was represented by three different attorneys: (1) Glenn Ripa, who appeared on his behalf for the limited purposes of representing him at the arraignment on January 3, 2013; (2) Robert Walters, who appeared on Petitioner's behalf on January 22, 2013 and withdrew on May 10, 2013 (Doc. No. 7); and (3) Richard Anthony Portale, who first appeared for Petitioner on April 26, 2013 and continued to represent him for the remainder of the criminal case (Doc. No. 12).

On July 8, 2013, Petitioner pleaded guilty pursuant to a plea agreement to one count of willful failure to pay over payroll taxes. (Plea Tr. 40:8–20.) At the change-of-plea hearing, Petitioner, while under oath, acknowledged that he had collected payroll tax contributions from his employees, which he knowingly failed to pay over to the IRS and instead pocketed. (*Id.* at 36:9–37:14.) Following Petitioner's allocution, the government indicated that, had the case gone

---

[1] Unless otherwise indicated, citations to docketed items refer to those materials that appear on ECF in *United States v. Whittingham*, No. 12-cr-971 (RJS). In ruling on the Petition, the Court has considered Petitioner's opening brief (Doc. No. 30), the government's answer (No. 14-cv-7738 (RJS), Doc. No. 5 ("Answer" or "Ans.")), and Petitioner's reply (Doc. No. 32). In ruling on the motion for early termination of supervised release, the Court has considered Petitioner's opening brief (Doc. No. 34), the government's opposition (Doc. No. 39), and Petitioner's reply (Doc. No. 40).

to trial, it would have presented substantial inculpatory evidence, including: (1) testimony from current and former employees of EZ Going Park Here and We Have Cars II indicating that Petitioner was the person who made hiring decisions and paid them; (2) bank records showing that Petitioner had exclusive control over the entities' finances; (3) testimony from IRS employees that Petitioner did not pay certain payroll taxes he collected on his employees' behalf, notwithstanding the fact that he also submitted documentation to the IRS representing that such payroll taxes had been paid; (4) testimony from Petitioner's accountant that he had informed Petitioner of his obligation to submit payroll taxes to the government on his employees' behalf and that Petitioner had failed to follow this advice; and (5) records of Petitioner's spending to show that he used funds that were meant to be paid over to the IRS on vacations and automobiles for himself. (Plea Tr. 38:19–39:17.) Under the plea agreement, Petitioner reserved the right to argue that he was responsible for a total tax loss of greater than $80,000 but less than $200,000, while the government asserted that Petitioner was responsible for a total tax loss of greater than $200,000 but less than $400,000. (Doc. No. 25-1 at 3.) On the government's motion, the Court eventually dismissed the twelve remaining counts. (Doc. No. 27 at 1.)

At Petitioner's sentencing hearing on May 12, 2014, Petitioner conceded that he was responsible for losses of greater than $200,000 but less than $400,000, resulting in a base offense level of 18 pursuant to Sections 2T1.6 and 2T4.1 of the United States Sentencing Guidelines (the "Guidelines"); the Court further found that Petitioner was entitled to a three-level reduction for acceptance of responsibility pursuant to Section 3E1.1 in light of his guilty plea, which resulted in a Guidelines range of 18 to 24 months imprisonment. (Doc. No. 28 ("Sent. Tr.") 3:11–21, 7:2–23.) Even so, in light of Petitioner's low likelihood of recidivism, his advanced age, and his many contributions to the community, the Court concluded that a below-Guidelines sentence of one year

3

and one day was sufficient but not greater than necessary to meet the objectives of sentencing set forth under 18 U.S.C. § 3553(a). (*Id.* at 7:2–23, 29:5–16.) The Court also ordered Petitioner to pay restitution in the amount of $251,265, which represented the amount Petitioner had accumulated in unpaid tax liabilities plus penalties and interest. (Doc. No. 27 at 5; Doc. No. 25-1 at 16.) Petitioner never filed a direct appeal of his sentence.

On October 1, 2014, while incarcerated, Petitioner filed the instant Petition *pro se*. In it, Petitioner claims that his various attorneys were ineffective for "inducing Petitioner int[o] a guilty plea" that he did not enter knowingly and voluntarily. (Pet. 3, 7.) In addition, Petitioner faults his lawyers for not moving to compel additional discovery under Rule 16 of the Federal Rules of Criminal Procedure and for failing to sufficiently investigate his case before his guilty plea. (*Id.* at 3.) Petitioner also asserts that Mr. Portale was constitutionally ineffective for "failing to challenge the loss amount" range of $200,000 to $400,000 at sentencing and for neglecting to discuss the presentence investigation report ("PSR") prepared by the United States Probation Office with him in advance of sentencing. (*Id.* at 5–6, 10.)

On February 2, 2017, Petitioner, who is currently serving a term of supervised release that expires on May 20, 2018, brought a motion seeking early termination of supervision. (Doc. No. 34.) In his motion, Petitioner asserts that he is entitled to early termination because of his "excellent behavior," his full compliance with the conditions of supervision, and his desire to travel to visit family in Jamaica. (*Id.*) The Court will consider the Petition and the motion for early termination in turn.[2]

---

[2] In light of Petitioner's *pro se* status, the Court has construed his submissions "liberally and interpreted them 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## II. Ineffective Assistance of Counsel

### A. Legal Standard

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted). A claim of ineffective assistance of counsel, however, is one permissible basis for bringing a Section 2255 petition.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel. When challenging the effectiveness of counsel's assistance, a party must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

With respect to *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). The Court starts from the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91). Because there are many different ways to provide effective assistance in any given case, and "[e]ven the best criminal defense attorneys would not defend a particular client the same way," there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689–90.

With respect to *Strickland*'s second prong, a petitioner who has pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In addition, a petitioner may show prejudice by demonstrating that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors. *See Missouri v. Frye*, 566 U.S. 133, 147–48 (2012); *Lafler v. Cooper*, 566 U.S. 156, 174–75 (2012) (finding prejudice where the defendant showed that, but for counsel's deficient performance, there was a reasonable probability that the court would have accepted a guilty plea with a sentence less than a third of the length of the sentence he received after trial). In the plea bargaining context, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. With respect to ineffective assistance claims that focus on counsel's performance at

sentencing, "the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130.

B. Discussion

First, Petitioner asserts that his counsel "induced" him to enter a guilty plea, and that his guilty plea was "not Knowing and Intelligent[] . . . ." (Pet. 3, 7.) As the Supreme Court has instructed, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," since "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Therefore, "a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." *United States v. Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016) (quoting *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001)).

At the July 8, 2013 change-of-plea hearing, Petitioner, while under oath, admitted to having collected payroll tax contributions from his employees, which he knowingly failed to pay over to the IRS and instead pocketed in violation of 26 U.S.C. § 7202. (Plea Tr. 36:9–37:14.) Petitioner also stated that no one had "threatened" him or promised him anything in exchange for a guilty plea and confirmed that he was aware of the many rights he was surrendering in pleading guilty, including the right to a speedy and public trial by jury and the presumption of innocence. (*Id.* at 7:15–11:4, 35:5–17.) He also stated that he had ample time to consult with Mr. Portale prior to the guilty plea and that he was satisfied with his attorney's representation. (*Id.* at 6:7–9, 7:3–14.) Consequently, Petitioner's conclusory and self-serving assertions to the contrary utterly fail to show that his guilty plea was coerced. *See, e.g.*, *Rosenberger v. United States*, 133 Fed. App'x

799, 801 (2d Cir. 2005) (denying habeas relief where petitioner "set forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty," and "the plea allocution indicates that [petitioner's] guilty plea . . . was knowing and voluntary." (citing *United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir. 2001)).

Petitioner also faults his three attorneys for not moving to compel discovery under Rule 16 of the Federal Rules of Criminal Procedure prior to the guilty plea, which he insists would have uncovered exculpatory information. (Pet. 3.) Rule 16 "establishes base-line requirements for pretrial discovery in a criminal case," *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 124 (2d Cir. 2008), and it obligates the government "to disclose any document 'within the government's possession' that is 'material to preparing the defense,'" *United States v. Smith*, 629 F. App'x 57, 60 (2d Cir. 2015) (quoting Fed. R. Crim. P. 16(a)(1)(E)). Here, Petitioner provides no evidence, other than his own conclusory assertions, that the government improperly withheld any documents from him and his attorneys, and he simply leaves it to the Court to guess what exculpatory evidence would have been found in the government's possession. By contrast, the government represents that it provided all pertinent discovery in its possession to Petitioner's attorney, and submits an affidavit from IRS Special Agent Michael Yun and records of email correspondence between the government and Petitioner's counsel that detail the various opportunities the government provided Petitioner and his lawyers to review pertinent discovery; in fact, according to the visitor logs of the United States Attorney's Office ("USAO"), Petitioner and his accountant visited the USAO on April 5, 2013 to review relevant discovery with Special Agent Yun. (Ans. 10; *see also* No. 14-cv-7738, Doc. No. 5-1 at 12–22.)

Since Petitioner has failed to demonstrate that the government's production of discovery materials was anything other than complete, it is obvious that any motion under Rule 16 would

8

have been denied had it been raised before Petitioner's guilty plea. *See United States v. Viertel*, No. 01-cr-571 (JGK), 2002 WL 1560805, at *11 (S.D.N.Y. July 15, 2002) (denying motion to compel under Rule 16 since "the government has now produced its discovery in this case, and there is no basis . . . to conclude that the production is incomplete"). It therefore follows, *a fortiori*, that Petitioner's attorneys' decisions not to move under Rule 16 were not objectively unreasonable, since "failure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

Similarly, given the substantial evidence of Petitioner's guilt, including the testimony of his former accountant, it is clear that defense counsel's advice to plead guilty prior to making a Rule 16 motion was not unreasonable. *See Best v. Griffin*, No. 15-cv-4073 (AJP), 2015 WL 6875016, at *18 (S.D.N.Y. Nov. 6, 2015), *report and recommendation adopted*, No. 15-cv-4073 (CM), 2016 WL 4030894 (S.D.N.Y. July 26, 2016) ("given the evidence of [petitioner's] guilt . . . counsel's advice" to "plead guilty was a reasonable trial strategy"); *Scott v. Superintendent, Mid-Orange Corr. Facility*, No. 03-cv-6383 (RJD), 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006) ("Where, as here, the evidence of a defendant's guilt is strong, courts have declined to find that counsel's advice to plead guilty constitutes ineffective assistance." (collecting cases)). Indeed, had Petitioner gone to trial and been found guilty, he would not have been entitled to acceptance-of-responsibility credit under Section 3E1.1 of the Guidelines, would have had a total offense level of at least 18, and therefore would have faced a range under the Guidelines of 27–33 months rather than 18–24 months.

Petitioner also fails to show prejudice from the decision not to bring a Rule 16 motion. Since, as noted above, the Court would have denied any motion under Rule 16, it necessarily follows that Petitioner did not suffer prejudice from counsel's failure bring such a motion. *See*

*Murphy v. United States*, No. 10-cr-107 (RJS), 2016 WL 6601554, at *6 (S.D.N.Y. Nov. 4, 2016) ("Petitioner cannot show prejudice" from failure to bring a motion that "the Court would have denied . . . ."). Furthermore, in light of the overwhelming evidence against him, Petitioner has failed to demonstrate "a reasonable probability that," but for the failure to make a Rule 16 motion, he "would have insisted on going to trial" and rejected the government's plea offer. *Hill*, 474 U.S. at 59; *see also, e.g.*, *Roman v. Cunningham*, No. 04-cv-1093 (NG), 2005 WL 1796122, at *6 (E.D.N.Y. July 27, 2005) (finding that petitioner had failed to demonstrate the "reasonable probability that counsel's performance affected the outcome of the plea process" where, as here, the government's evidence against Petitioner was "strong"). Thus, Petitioner's arguments regarding ineffectiveness based on his lawyers' decision not to make a Rule 16 motion clearly fail.

Petitioner also repeatedly and conclusorily avers that his various attorneys failed to sufficiently investigate his case prior to recommending that he plead guilty. (*See, e.g.*, Pet. 10.) But he does not identify what evidence the investigation would have produced to support his defense, and it is well settled that "undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation" are insufficient to establish either ineffective assistance or prejudice under *Strickland*. *See, e.g.*, *Paige v. Lee*, 99 F. Supp. 3d 340, 349 (E.D.N.Y. 2015) (citation omitted) (collecting cases).

Next, Petitioner faults Mr. Portale for not challenging the loss amount range of $200,000 to $400,000 at his sentencing hearing. Under Section 2T4.1 of the 2012 United States Sentencing Guidelines, a "tax loss" of greater than $200,000 but less than $400,000 yields a base offense level of 18, while a tax loss of greater than $80,000 but less than $200,000 yields a base offense level of 16. Although Mr. Portale argued in his written sentencing submission that Petitioner was only responsible for a tax loss in the $80,000 to $200,000 range (Doc. No. 25 at 10), Mr. Portale

conceded at the sentencing hearing that a tax loss of $200,000 to $400,000 was appropriate (Sent. Tr. 3:17–21). Indeed, the government pointed to substantial evidence – including Petitioner's companies' tax returns, receipts of Petitioner's personal expenditures, and the testimony of his accountant – that demonstrated that Petitioner had failed to pay well over $200,000 in payroll taxes. (*See* Doc. No. 26-1.) Since Petitioner has pointed to no evidence suggesting that the loss amount was less than $200,000, it therefore follows that his counsel's decision not to make this argument "does not rise to the level of ineffective assistance" and that Petitioner cannot show prejudice from the fact that his counsel did not make these arguments. *See Kirsh*, 54 F.3d at 1071.[3]

Finally, Petitioner claims ineffective assistance based on Mr. Portale's alleged failure to review the PSR with him prior to sentencing. (Pet. 4.) But this assertion is directly contradicted by the transcript from the sentencing proceeding, during which the Court inquired, and Mr. Portale confirmed, that he had reviewed the PSR with Petitioner. (Sent. Tr. 3:11–21.) Even assuming, *arguendo*, that Mr. Portale failed to review the PSR with Petitioner, Petitioner fails to "show a reasonable probability that, but for" this error, "he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130. Construing his petition liberally, Petitioner appears to argue that, but for his counsel's failure to review the PSR with him, he would have insisted that a loss amount of $80,000 to $200,000, rather than the $200,000 to $400,000 recommended by the PSR, was appropriate. But for the reasons set forth in the previous paragraph, that argument would have been contradicted by the evidence before the Court and therefore would not have been meritorious.

---

[3] Although Petitioner at times conclusorily avers that Mr. Portale "fail[ed] to prepare" for the sentencing hearing (Pet. 3), it is well established that "allegations relating to counsel's alleged errors in . . . preparation and advocacy that are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source' are insufficient to establish an ineffective assistance claim," *Barnes v. United States*, No. 04-cr-186 (LAP), 2015 WL 5854030, at *7 (S.D.N.Y. Aug. 31, 2015) (quoting *Vasquez v. United States*, No. 91-cr-153 (PKL), 1997 WL 148812, at *2 (S.D.N.Y. Mar. 28, 1997)). Petitioner's grievances are also belied by Mr. Portale's capable and professional representation at sentencing, which prompted the Court to thank Mr. Portale on the record for his "very thorough and thoughtful" submission and commend Mr. Portale for doing "a really fine job in . . . representing" Petitioner. (Sent. Tr. 17:15, 26:18–20.)

11

Accordingly, even if Mr. Portale had failed to review the PSR with his client, Petitioner "cannot show prejudice" caused by the alleged misconduct. *See United States v. Kaba*, 495 F. App'x 197, 199 (2d Cir. 2012) (similarly rejecting ineffective assistance claim based on attorney's alleged failure to review PSR with the petitioner prior to sentencing where, as here, the petitioner's only objection to the PSR lacked merit).[4]

### III. EARLY TERMINATION OF SUPERVISED RELEASE

The Court next considers Petitioner's motion under 18 U.S.C. § 3583(e) and Rule 32.1(c) of the Federal Rules of Criminal Procedure to terminate his term of supervised release, which is scheduled to end on May 20, 2018. A district court is authorized to "terminate a term of supervised release . . . at any time after the expiration of one year of supervised release," so long as "it is satisfied that such action is [1] warranted by the conduct of the defendant . . . [2] and the interest of justice." *United States v. Key*, 602 F.3d 492, 494 (2d Cir. 2010) (quoting 18 U.S.C. § 3583(e)(1)). Before ordering early termination, a district court must consider the factors set forth in 18 U.S.C. § 3553(a), which "address 'general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency.'" *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010) (quoting *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997)). As the Second Circuit has explained, "[o]ccasionally, changed circumstances" – such as "exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release – will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *Lussier*, 104 F.3d at 36. For example, early termination may be justified

---

[4] Tellingly, Petitioner concedes in his brief filed this year in support of his motion for early termination that the Court's sentence of one year and one day "was the appropriate sentence, not greater than necessary" (Doc. No. 34 at 2), an admission that clearly undercuts any claim of prejudice arising out of Mr. Portale's representation at sentencing.

where conditions of supervised release hinder a fully compliant defendant's ability to obtain employment and reintegrate into society. *See, e.g.*, *United States v. Arellano*, No. 13-cr-33 (RJS), Doc. No. 41 (S.D.N.Y. Apr. 6, 2016) (granting termination of supervised release one year early where fully compliant supervisee was a full-time truck driver and the conditions of supervision "impede[d] him from obtaining a better and more secure job" with UPS or FedEx, "for which he ha[d] applied and otherwise [was] eligible").

Even so, the law is clear that only "exceptional cases" involving "special, extraordinary, or unforeseen circumstance[s]" warrant early termination. *United States v. Bouchareb*, 76 F. Supp. 3d 478, 480 (S.D.N.Y. 2014) (quoting *United States v. Flores*, No. 99-cr-1110 (RWS), 2010 WL 2573385, at *1 (S.D.N.Y. June 28, 2010)). Thus, a defendant's full compliance with the terms and conditions of supervised release, standing alone, is insufficient. *See United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("While [defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule."); *accord United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D.N.Y. 2015) ("Early termination is not warranted where a defendant did nothing more than that which he was required to do by law."); *United States v. Gonzales*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1 (S.D.N.Y. Aug. 3, 2015) (although defendant was a "model probationer," "present[ed] a low risk of recidivism," and "the deterrent value of his case [had] been fully realized," early termination was not appropriate).

Having considered the factors set forth in § 3553(a), the Court concludes that early termination of Petitioner's supervised release would be unwarranted. Petitioner asserts that he has behaved "excellent[ly]" and has "been compliant" with all directives of the United States Probation Office. (Doc. No. 34 at 1.) But nothing in Petitioner's submission "rises to the level of a special,

13

extraordinary, or unforeseen circumstance that distinguishes [Petitioner] from other compliant defendants on supervised release." *Bouchareb*, 76 F. Supp. 3d at 480 (quoting *Flores*, 2010 WL 2573385, at *1). Indeed, while Petitioner's compliance with the terms of supervised release is "commendable," such "behavior is exactly what is expected of all defendants on supervised release and therefore does not warrant early termination." *Id.* (quoting *Flores*, 2010 WL 2573385, at *1). And while Petitioner bemoans the fact that he cannot travel to visit his family in Jamaica without first seeking approval from Probation and from the Court (Doc. No. 34 at 2), the mere inconvenience of making such a request is clearly not a valid basis for terminating his supervision, *see Gonzalez*, 2015 WL 4940607, at *1. The Court further finds that early termination would be particularly inappropriate in light of the fact that Petitioner still has outstanding restitution obligations of approximately $248,000. *See United States v. Lagone*, No. 10-cr-818 (JFB), 2017 WL 606016, at *4 (E.D.N.Y. Feb. 15, 2017) (concluding, "given the serious nature of defendant's underlying criminal conduct and his outstanding restitution payments . . . that supervised release continues to be necessary to ensure that . . . he fulfills his restitution obligations" and citing 18 U.S.C. §§ 3553(a)(2), (a)(7)). Accordingly, Petitioner's motion for early termination of his supervision is denied.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that the Petition and the motion for early termination of supervised release are DENIED. In addition, because Petitioner has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C.

§ 1915(a)(3) that any appeal from this Opinion and Order would not be undertaken in good faith, and, therefore, Petitioner may not proceed *in forma pauperis*.

The Clerk is respectfully directed to: (1) terminate the motions pending at docket numbers 30 and 34 in case No. 11-cr-971 (RJS); (2) close the civil case, 14-cv-7738 (RJS); and (3) mail a copy of this Opinion and Order to Petitioner.

SO ORDERED.

Dated: May 22, 2017
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/22/17